UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEVANTE DEGREE,

    Plaintiff,

    v.                                 CIVIL ACTION NO. 24-12415-NMG

CITY OF LOWELL, et al.,

    Defendants.


REPORT AND RECOMMENDATION ON
<u>LOWELL DEFENDANTS' MOTION TO DISMISS (#19)</u>


KELLEY, U.S.M.J.

I. <u>Introduction.</u>

After numerous criminal charges and civil violations were brought against him (and later dismissed) as a result of what he claims was a campaign of harassment and intimidation, Plaintiff DeVanté DeGree sued the City of Lowell ("the City"), several Lowell Police Department ("LPD") officers, one LPD detective,[1] and one Massachusetts State Police trooper on September 20, 2024.[2] (#1.) He amended his complaint on November 27, 2024, *see* #11, and amended it again on December 20, 2024. *See* #16, "Second Amended Complaint" ("SAC"). Through the SAC's fifteen counts, Plaintiff asserts various federal and state civil rights violations and common law claims

---

[1] LPD Officers William Martir, Scott Suave, Danny Perrin, Jr., and Matthew Trani, LPD Detective Joseph Borodawka, and the City are referred to as the "Lowell Defendants." (#16 ¶¶ 7-11; #19 at 1.) Martir, Suave, Perrin, Jr., Trani, and Borodawka are referred to as the "LEO Defendants." *See* #16 ¶ 11.

[2] Massachusetts State Police Trooper Thomas Janeczak has filed a separate motion to dismiss. (#35.) That motion, which is not yet ripe, will be addressed through a separate report and recommendation.

and seeks monetary damages, costs, and fees.

The Lowell Defendants moved to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6). (#19.) Plaintiff opposed, *see* #23, and on June 23, 2025, this court heard argument. *See* #42. For the reasons that follow, this court recommends that the Lowell Defendants' Motion to Dismiss (#19) be allowed on all counts, except for Plaintiff's Fourth Amendment claim against Perrin, Jr. under § 1983 in Count 1: the court recommends that the motion be denied as to that count.

## II. Background.

The facts are drawn from the SAC and are, at this stage, accepted as true. *See McKee v. Cosby*, 874 F.3d 54, 59 (1st Cir. 2017).

### A. The Police Retaliate Against Plaintiff After Peaceful Demonstrations in the City.

Over the course of several months in 2020 and 2021, Plaintiff's mother, Tina DeGree ("Tina"), peacefully petitioned the City with other members of the community for more information after Moses Harris, Tina's nephew, disappeared. (#16 ¶¶ 16-17.) According to Plaintiff, employees and representatives of the City and the LPD "targeted" Tina because of her participation in the demonstrations in an effort "to silence her." *Id.* ¶ 18.

They later targeted Plaintiff, both because he was Tina's son, *see id.* ¶ 16, and because of "[his] exercise of [his] First Amendment rights." *Id.* ¶¶ 15, 22. Plaintiff alleges that "[r]epresentatives and employees of the City of Lowell and the LPD, including Defendants . . . brought criminal charges and civil violations" against him "as a means to silence him," and in retaliation for the petitioning.[3] *Id.* ¶¶ 59-60.

As evidence of the "pattern of harassment and intimidation" he has experienced up to the

---

[3] The extent of Plaintiff's involvement in the petitioning is not clear. *See id.* ¶¶ 17-22.

present time,[4] Plaintiff cites "four (4) Lowell District Court cases on which [his] civil rights action is based: 2011CR001972, 2211CR004419, 2411CR001834, and 2411CR001904."[5] *Id.* ¶ 24.

B. <u>The Four Lowell District Court Cases.</u>

1. <u>2011CR001972 – The Threats-Related Charges.</u>

In the first of the four cases, Plaintiff alleges that Officer Martir and Detective Borodawka "without probable cause charged [him] with two counts of making a threat to commit a crime." *Id.* ¶ 25. These charges were based on alleged statements Plaintiff made to two individuals; he does not specify the date on which the statements were made. *Id.* ¶ 26.

Plaintiff's first statement "contained no threat to commit any act, let alone a crime of any kind[,]" although he acknowledges that it "contained derogatory language, referenced a social media post," and that he then told the individual to whom it was directed "to 'come outside.'" *Id.* ¶ 27. He does not further describe what he said or under what circumstances. As Plaintiff explains, Martir and Borodawka "knew this statement did not contain a threat to commit any act, especially not a crime[,]" but they charged him anyway. *Id.* ¶ 28.

The second statement was "an alleged exchange" between Plaintiff and another person, and was made as Plaintiff was driving in the City. *Id.* ¶ 30. During that incident, the pair "allegedly

---

[4] Plaintiff alleges that this "pattern of harassment and intimidation" existed "[b]etween June 2015 and December 2020," and he lists eleven "cases, criminal charges, and civil violations" which he claims were either dismissed or ended in a disposition favorable to him. *See* #16 ¶¶ 12-13, 23(a)-(k). Plaintiff does not base his claims here on any of these incidents. *See id.* ¶ 24. The Lowell Defendants later supplemented their briefing on the motion to dismiss, "cross-referenc[ing] the offense date on each criminal case's docket with Plaintiff's certified driving history" from this period. (#43 at 2.) The results of this comparison, which Plaintiff does not dispute, indicate that his driver's license "was suspended on every occasion he was cited by the LPD for driving with a suspended license." *Id.* at 2.

[5] The details of Lowell District Court case 2411CR001904, an incident involving Plaintiff and Trooper Janeczak, are not relevant to this motion and are not further discussed. *See supra,* n.2.

exchanged expletives," with Plaintiff "allegedly ma[king] a statement as he drove away." *Id.* ¶ 31. According to Plaintiff, however, the interaction "never occurred . . . , and there was no corroborative evidence demonstrating that it [did][.]" *Id.* ¶ 32. He asserts that at the time of the incident "he was at work in another part of the City" and that Martir and Borodawka "knew this statement did not occur" but charged him anyway and did so, as with the first statement, "to continue the well-documented pattern of harassment and intimidation perpetrated against [him][.]" *Id.* ¶¶ 29-34.

On September 21, 2021, in the Lowell District Court, the first count, where Plaintiff told the person to "come outside," was dismissed, and a required finding of not guilty entered as to the second count. *Id.* ¶ 36.

### 2. 2211CR004419 – The Motor Vehicle- and Window Obstruction-Related Charges.

On April 25, 2022, Officer Suave stopped Plaintiff "allegedly because [Plaintiff] was playing music in the vehicle he was operating and his windows were tinted." *Id.* ¶ 38. Suave knew that neither of these reasons "constituted a lawful reason" to stop Plaintiff. *Id.* ¶ 39. During the stop, Plaintiff provided him with documentation that "show[ed] the level of tint on [his] windows was legal[,]" but Suave "charged [him] with improper operation of a motor vehicle and a window obstruction" anyway, to continue the "pattern of harassment and intimidation" Plaintiff says he experienced. *Id.* ¶¶ 40-42.

Suave also charged Plaintiff "with operating a motor vehicle with a suspended license," but that count was dismissed in the Lowell District Court on January 17, 2023, the same date on which Plaintiff was found not responsible with respect to the improper operation of a motor vehicle and the window obstruction charges. *Id.* ¶ 37.

### 3. 2411CR001834 – The Motor Vehicle-Related Charge.

More than two years later, on May 14, 2024, Officers Perrin, Jr. and Trani observed Plaintiff as he was driving in the City. *Id.* ¶ 44. As Plaintiff explains, "Officer Perrin recognized [him]" and "stopped him and the vehicle he was operating because [he] recognized [Plaintiff]." *Id.* ¶¶ 44-45. Plaintiff claims that the two officers then "charged him with operating a motor vehicle with a suspended license to justify their unlawful stop" and to further their efforts to intimidate and harass him. *Id.* ¶ 46.

The next day, May 15, 2024, the charge was dismissed. *Id.* ¶ 47.

## III. Legal Standard.

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing a motion to dismiss under Rule 12(b)(6), the court employs a two-step process, in which it first "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (additional citation omitted). It then "take[s] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to "see if they plausibly narrate a claim for relief." *Id.* Under this approach, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

## IV. Discussion.

### A. Count 1 – "Fourth Amendment Violation Under 42 U.S.C. § 1983" – LEO Defendants.

Plaintiff alleges that as a result of actions taken by the LEO Defendants, he "was denied

his rights as guaranteed under the Fourth Amendment to the Constitution of the United States."
(#16 ¶ 64.)

    1. <u>42 U.S.C. § 1983.</u>

Title 42 U.S.C. § 1983 creates a private right of action against any person who, under color
of state law, "subjects, or causes to be subjected, any . . . person within the jurisdiction [of the
United States] to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws[.]" A claim under § 1983 has two elements, the first of which is not at issue
here: "1) that the conduct complained of has been committed under color of state law, and 2) that
this conduct worked a denial of rights secured by the Constitution or laws of the United States."
*Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999) (additional citation omitted).

    2. <u>The Fourth Amendment.</u>

The Fourth Amendment to the United States Constitution protects "[t]he right of the people
to be secure in their persons, houses, papers, and effects, against unreasonable searches and
seizures[.]" U.S. Const. amend. IV. Because, under the Fourth Amendment, "a traffic stop
constitutes a seizure of both the stopped vehicle and its occupants . . . a traffic stop must satisfy a
standard of objective reasonableness." *United States v. Arnott*, 758 F.3d 40, 43 (1st Cir. 2014)
(citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)) (additional citation omitted). "A traffic stop is
constitutional if an officer has a reasonable suspicion of unlawful conduct involving a motor
vehicle or its operation," such as a traffic violation or infraction. *United States v. Jenkins*, 680 F.3d
101, 104 (1st Cir. 2012) (additional citation omitted). In evaluating whether reasonable suspicion
exists, the court applies "an objective standard, rather than assessing the subjective intent of an
individual officer," and considers the "'totality of the surrounding circumstances.'" *United States
v. Tiru-Plaza,* 766 F.3d 111, 116 (1st Cir. 2014) (quoting *United States v. Ruidiaz*, 529 F.3d 25,

29 (1st Cir. 2008)).

  3. <u>The Two Unlawful Stops.</u>

  Plaintiff appears to base his claim on two allegedly unlawful stops: the (1) April 25, 2022 stop by Suave, and the (2) May 14, 2024 stop by Perrin, Jr. and Trani. *See* #16 ¶¶ 38-39, 44-46.

  a. <u>The April 25, 2022 Stop by Suave (2211CR004419).</u>

  As stated above, Plaintiff claims that Suave stopped him "allegedly because [he] was playing music in [his] vehicle . . . and his windows were tinted" when Suave "knew neither the music nor the tinted windows constituted a lawful reason" to stop him. *Id.* ¶¶ 38-39. Beyond the conclusory assertion that Suave knew that there was no lawful reason to stop Plaintiff, however, Plaintiff does not offer any facts to support his assertion that Suave lacked reasonable suspicion to stop Plaintiff for the window tint and, as the Lowell Defendants argue, properly "cite[] [him] for driving with obstructed windows under M.G.L. c. 90, § 9D." (#20 at 3.)

  Plaintiff acknowledges that his windows were tinted, *see* #16 ¶ 40, supporting the inference that Suave had reasonable suspicion that the windows of the vehicle "exceeded the permissible limits of § 9D." *Commonwealth v. Baez,* 710 N.E.2d 1048, 1051 (Mass. App. Ct. 1999) (relevant standard "in determining the legality of a stop based on a suspected violation of c. 90, § 9D, is whether the officer reasonably suspected, based on his visual observations, that the tinting of the windows exceeded the permissible limits of § 9D"; stop was "reasonable and warranted" where trooper's attention was drawn to car because its windows appeared darker than legal limit); *see Bailey v. McCarthy*, Civil No. 01–82–P–C, 2002 WL 91886, at *6 (D. Me. Jan. 25, 2002) (dismissing § 1983 claim, concluding that initial stop was lawful where trooper's suspicion that vehicle had illegally-tinted windows was not unreasonable; the relevant state statute "presuppose[d] both that it will be difficult to ascertain, by visual inspection alone, whether a

vehicle is in compliance and that vehicles that actually comply with the law nonetheless will be stopped"), *report and recommendation adopted*, (D. Me. Feb. 25, 2002).

Plaintiff alleges that he was later "found not responsible" for the improper operation and window obstruction charges that resulted, *see* #16 ¶ 37, but the fact that "the charges were later resolved in [his] favor does not mean the [seizure] was unreasonable." *Bey v. Clapprood*, Civil Action No. 23-30026-MGM, 2024 WL 3446824, at *4 (D. Mass. Mar. 14, 2024).

In short, considering the circumstances and the conclusory nature of his allegations, Plaintiff does not plausibly allege that Suave lacked reasonable suspicion to stop him, and any Fourth Amendment claim under § 1983 based on this incident should be dismissed.

      b. <u>The May 14, 2024 Stop by Perrin, Jr. and Trani (2411CR001834).</u>

Plaintiff next claims that on May 14, 2024, Officers Perrin, Jr. and Trani observed him driving on Wamesit Street in Lowell and "stopped him and the vehicle he was operating because [Perrin, Jr.] recognized [him]." (#16 ¶¶ 44-45.) The officers then "charged him with operating a motor vehicle with a suspended license to justify their unlawful stop[,]" *id.* ¶ 46, a stop which Plaintiff argues occurred for "no other reason" than the fact that he was recognized. (#23 at 8.)

Defendants do not address whether there was reasonable suspicion for the stop; they only discuss Plaintiff's malicious prosecution claim. *See* #20 at 17-18. Although they argue that public records confirm that Plaintiff's license was suspended on the date he was stopped, *see id.* at 7 n.5, Defendants do not specify how Perrin, Jr. knew Plaintiff's license was suspended before stopping him, and they do not attempt to rebuff Plaintiff's claim that Perrin, Jr. initiated the stop solely because he recognized him. *Compare Lipscomb v. Rhode Island,* Civil Action No. 22-319 WES, 2025 WL 384586, at *7 (D.R.I. Feb. 4, 2025) (complaint established that patrolman had reasonable suspicion for initiating traffic stop where plaintiff "expressly alleged that [patrolman] knew

[plaintiff's] name and that the license was suspended when he approached the vehicle, demonstrating that he had looked up the status of the license before pulling [plaintiff] over").

Instead, Defendants assert that "a merely defective traffic stop is not a sufficient imposition to constitute a Fourth Amendment claim under [§ 1983]." (#43 at 4.) Citing a handful of out-of-circuit cases, they claim that the stop was "too *de minimis* to be actionable[.]" (#42 at 4-5 (collecting cases)). The court disagrees. "[T]he temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment." *Standifird v. Town of Boxborough*, 84 F. Supp. 2d 213, 216 (D. Mass. 2000) (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996)), *affirmed as modified*, No. 00-1386 (1st Cir. Oct. 16, 2000). "As a result, an automobile stop is subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.; see United States v. Cruz-Rivera*, 14 F.4th 32, 43 (1st Cir. 2021) ("A temporary detention of an individual during a traffic stop by police constitutes a seizure to which the protections of the Fourth Amendment apply.") (additional citations omitted).

Plaintiff's Fourth Amendment claim against Perrin, Jr. under § 1983 should not be dismissed.[6]

B. Count 2 – "Article XIV Violation Under G.L. c. 12, § 11I" – LEO Defendants.

Plaintiff seeks relief under § 11I of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H and 11I, for the "deni[al] [of] his rights as guaranteed under Article XIV of the Massachusetts Declaration of Rights and the Fourth Amendment to the Constitution of

---

[6] Though Plaintiff alleges that both Perrin, Jr. and Trani later charged him, he alleges that it was Perrin, Jr. alone who recognized him and stopped him. *See* #16 ¶ 45 ("Officer Perrin recognized Mr. Degree and stopped him and the vehicle he was operating because Defendant Perrin recognized Mr. Degree."). As the SAC does not allege that Trani played any role in initiating the unlawful stop, Count 1 does not raise a Fourth Amendment claim against him.

the United States." (#16 ¶ 67.)

"To establish a claim under the MCRA, the plaintiff must prove that the exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion." *Sheffield v. Pieroway*, 361 F. Supp. 3d 160, 166 (D. Mass. 2019) (citing *Bally v. Ne. Univ.*, 532 N.E.2d 49, 51-52 (Mass. 1989)).

Plaintiff, who asserts a violation of Article XIV of the Massachusetts Declaration of Rights,[7] appears to ground his MCRA claim in the April 25, 2022 and May 14, 2024 traffic stops. Any MCRA claim against Suave for the April 25, 2022 stop, however, should be dismissed where Plaintiff has not plausibly alleged that any constitutional violation was committed. *See Morrissey v. Town of Agawam*, 883 F. Supp. 2d 300, 314 (D. Mass. 2012) (where plaintiff failed to establish that defendants violated any constitutional right for the purposes of his § 1983 claim, his MCRA claim failed too); *see also Finamore v. Miglionico*, 15 F.4th 52, 59 (1st Cir. 2021) (where "the absence of probable cause represent[ed] the sine qua non of the appellant's claims under both section 1983 and the MCRA," they each failed where defendant officers had probable cause for their actions).

Any MCRA claim Plaintiff brings against Perrin, Jr. for the May 14, 2024 stop should also be dismissed. In general, "a 'direct violation' of a person's constitutional rights, standing alone, does not implicate the MCRA." *Sepulveda v. UMass Corr. Health Care*, 160 F. Supp. 3d 371, 390 (D. Mass. 2016) (citing *Longval v. Comm'r of Corr.*, 535 N.E.2d 588, 593 (Mass. 1989)). "Instead, the MCRA 'contemplates a two-part sequence: liability may be found where (1) the defendant

---

[7] That provision reads, in relevant part, that "[e]very subject has a right to be secure from all unreasonable searches, and seizures, of his person, his houses, his papers, and all his possessions." Mass. Const. pt. 1, art. XIV.

threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do." *Sepulveda*, 160 F. Supp. 3d at 390 (quoting *Morrissey*, 883 F. Supp. 2d at 314) (additional citation omitted). Under this construction, courts have recognized that "a plaintiff cannot rely on the same conduct to show both the right that was interfered with and the threats, coercion, or intimidation." *Osman v. Dwan*, Civil Action No. 20-11356-NMG, 2021 WL 11505292, at *7 (D. Mass. July 30, 2021) (citing *Santiago v. Keyes*, 890 F. Supp. 2d 149, 159 (D. Mass. 2012)), *report and recommendation adopted*, 20-11356-NMG, (D. Mass. Sept. 10, 2021).

Plaintiff does not allege that Perrin, Jr. performed the unlawful traffic stop in order to interfere with, or attempt to interfere with, by intimidation, coercion, or threats, Plaintiff's exercise of his lawful rights. To the extent he asserts that the unlawful stop effected by Perrin, Jr. was itself evidence of intimidation, coercion, or threatening behavior, that allegation cannot support an MCRA claim. *See Osman*, 2021 WL 11505292, at *7 (although plaintiff had pled a viable Fourth Amendment violation under § 1983 for an allegedly unreasonable stop and seizure, his MCRA claim failed where it did not "allege or plead facts to show that the unlawful stop . . . [was] intended to coerce and intimidate [plaintiff] into refraining from the exercise of some other right or privilege secured by law"); *see also Santiago*, 890 F. Supp. 2d at 159 ("Plaintiff cannot rely on the [seizure] as both the constitutional violation and the evidence of threats, intimidation, or coercion.").

Count 2 should be dismissed.

C. Counts 3, 4, and 5 – Malicious Prosecution Claims – LEO Defendants.

Count 3, "Common law malicious prosecution," Count 4, "Malicious Prosecution under 42 U.S.C. § 1983," and Count 5, "Malicious prosecution under G.L. c. 12, § 11I," are supported by the same allegations. Plaintiff claims that although "[t]here was no probable cause for a number of

the charges contained in the criminal proceedings" against him, the LEO Defendants "commenced and continued the criminal proceedings against [him] with actual malice," and that these proceedings terminated in his favor. (#16 ¶¶ 68-82.)

A common law malicious prosecution claim requires "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros*, 572 N.E.2d 7, 10 (Mass. 1991)). The First Circuit has recognized that "more is needed to transform malicious prosecution into a claim cognizable under section 1983"— that is, "the plaintiff also must show a deprivation of a federally-protected right." *Nieves*, 241 F.3d at 53 (1st Cir. 2001) (additional citations omitted).

1. <u>The Improper Operation and Window Obstruction Charges (the Suave Stop).</u>

a. <u>§ 1983 Claim.</u>

Plaintiff claims that following the traffic stop on April 25, 2022, Suave charged him "with improper operation of a motor vehicle and a window obstruction" despite receiving "documentation showing the level of tint on [Plaintiff's] windows was legal[,]" in order "to continue the well-documented pattern of harassment and intimidation" to which Plaintiff was subjected. *Id.* ¶¶ 40-42. Plaintiff does not "identify the specific constitutional right infringed[,]" as he must, *see Nieves,* 241 F.3d at 53, although he does appear to implicate the Fourth Amendment through his argument that Suave "stopped and charged him without probable cause." (#23 at 7.)

"To succeed on a constitutional claim for malicious prosecution, a plaintiff must 'establish that the defendant (1) caused (2) a seizure of plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor.'" *Price v. Mori*,

Civil Action No. 1:18-12035-IT, 2021 WL 352351, at *4 (D. Mass. Feb. 1, 2021) (quoting *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013)) (additional quotations and citation omitted). The second element of such a claim "requires 'a deprivation of liberty, pursuant to legal process, that is consistent with the concept of a Fourth Amendment seizure.'" *Price*, 2021 WL 352351, at *4 (quoting *Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010)).

As the First Circuit has explained:

> [t]he tort of malicious prosecution permits damages for a deprivation of liberty – a seizure – pursuant to legal process. Generally, the offending legal process comes either in the form of an arrest warrant . . . or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure).

*Nieves*, 241 F.3d at 54 (additional citations and emphasis omitted).

To the extent Plaintiff claims that he was "seized" for Fourth Amendment purposes when Suave "charged him without probable cause," this cannot support a malicious prosecution claim under § 1983. Plaintiff alleges that Suave "charged [him] with operating a motor vehicle with a suspended license, which was dismissed on January 17, 2023," and also "improper operation of a motor vehicle and a window obstruction, for which [he] was found not responsible on January 17, 2023." (#16 ¶ 37.)

He does not allege, however, that he experienced any "significant deprivation of liberty" as a result of the charge, and his allegations "simply do not approach the level necessary to constitute a Fourth Amendment seizure" for purposes of a malicious prosecution claim. *Nieves,* 241 F.3d at 56 (malicious prosecution claim under § 1983 was properly dismissed where, although appellants had been required to make several court appearances, there was no evidence that they were, for example, "held after the initiation of criminal proceedings, required to post a monetary bond upon arraignment," or "subjected to restrictions on their travel"); *see Harrington*, 610 F.3d at 32-33 (plaintiff's "loss of employment, reputational harm, and stress" could not "collectively

constitute a seizure[,]" his "standard conditions of pretrial release" did not violate the Fourth Amendment, and he was not "otherwise burdened with any significant deprivation of liberty"; to hold otherwise would "trivialize" § 1983); *see also Price*, 2021 WL 352351, at *5 (malicious prosecution claim under § 1983 failed where there was no indication of the sort of imposition necessary to implicate the Fourth Amendment).

      b. <u>Common Law Claim.</u>

      Plaintiff's allegations against Suave do not support a malicious prosecution claim under the common law, either. Proof that the defendant acted with some "improper purpose" is "an essential 'element of malicious prosecution.'" *Wilber v. Curtis*, 872 F.3d 15, 24 (1st Cir. 2017) (citing *Chervin v. Travelers Ins. Co.*, 858 N.E.2d 746, 756, 758 (Mass. 2006) and acknowledging *Chervin* court's decision to "adopt the 'improper purpose' formulation . . . [for] the element of 'malice.'"). "[I]mproper motive may be one of vexation, harassment, annoyance, or attempting to achieve an unlawful end or a lawful end through an unlawful means." *Chervin*, 858 N.E.2d at 757 (additional citation omitted); *see Afreedi v. Bennett*, 517 F. Supp. 2d 521, 540 (D. Mass. 2007). Plaintiff claims that he "provided documentation" to Suave "showing the level of tint on [his] windows was legal[,]" but that Suave, "[d]espite receiving this documentation," charged him with improper operation of a motor vehicle and window obstruction anyway. (#16 ¶¶ 40-41.) As the Lowell Defendants sum it up, "there are scant specifics in the SAC as to what the so-called 'documentation' was, who authored it, and why it would preclude a reasonable police officer from citing [Plaintiff] for the window obstruction." (#20 at 3.) Suave was not obligated to accept the unexplained documentation. As there are no facts alleged by plaintiff that adequately plead that Suave's decision to charge him was the result of an improper motive, the common law malicious

prosecution claim against Suave should be dismissed.[8]

    2. <u>The Two Charges of Threatening to Commit a Crime (Martir and Borodawka).</u>

    Any malicious prosecution claim Plaintiff brings against Martir and Borodawka under § 1983 or the common law should also be dismissed.

    a. <u>§ 1983 Claim.</u>

    Plaintiff alleges that Martir and Borodawka "without probable cause charged [him] with two counts of making a threat to commit a crime" based on "two statements [he] allegedly made to two, separate individuals[,]" where one count was later dismissed and the other resulted in "a required finding of not guilty[.]" (#16 ¶¶ 25-26, 36.) As with the allegations against Suave, Plaintiff does not identify any constitutional violation, but to the extent he implicates the Fourth Amendment, he does not allege that either officer seized him or that he suffered any significant deprivation of liberty following their decision to charge him. *See Felix v. Morrissey*, Civil Action No. 23-12238-DJC, 2025 WL 50298, at *4 (D. Mass. Jan. 8, 2025) (§ 1983 malicious prosecution claim failed where plaintiff did not "assert any specific basis for a violation of a constitutional right"). "In the First Circuit, '[t]he law is settled that a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail.'" *Weichel v. Town of Braintree*, Civil Action No. 1:20-11456-IT, 2025 WL 1756871, at *7 (D. Mass. June 25, 2025) (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996)).

---

[8] As discussed below, counsel for Plaintiff conceded at oral argument that Plaintiff's license was suspended on the date of each of the three traffic stops in this case, so any malicious prosecution claim Plaintiff asserts against Suave with respect to the operating with a suspended license charge should also be dismissed.

b. Common Law Claim.

Plaintiff alleges with regard to the first of these charges that his comments "contained no threat" although he acknowledges that they "contained derogatory language, referenced a social media post, and [that] [he] then told the individual to 'come outside.'" (#16 ¶ 27.) He alleges, without repeating what he actually said,[9] that Martir and Borodawka "knew this statement did not contain a threat to commit any act, . . . [b]ut [that] they charged [him] . . . anyway . . . to continue the well-documented pattern of harassment and intimidation perpetrated against [him][.]" *Id.* ¶¶ 28-29. Plaintiff offers no facts to support his claim that the officers knew there was no probable cause to charge him. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557) (additional quotations omitted).

Plaintiff alleges that the second count was based on "an alleged exchange" between him and another person which took place as he was driving in the City, where the pair "allegedly exchanged expletives, and [he] allegedly made a statement as he drove away." (#16 ¶¶ 30-31.) According to Plaintiff, he was "at work in another part of the City" during the incident, and "there

---

[9] The Lowell Defendants argue that the SAC fails to "specifically identify the statements that led to [these] charges[,]" *see* #20 at 6, and they attach as Exhibit 1 to their memorandum (#20-1) LPD reports documenting the two incidents and the statements at issue. Plaintiff, citing *Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013), argues that they are not the sort of "extrinsic documents" that properly may be considered by a court at this stage. *See* #23 at 3. A court may consider, "[u]nder certain 'narrow exceptions,' some extrinsic documents . . . without converting a motion to dismiss into a motion for summary judgment[,]" including "'documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint.'" *Freeman*, 714 F.3d at 36 (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)) (declining to consider "police incident reports") (alterations in original); *see Ryan v. McCullough,* Civil Action No. 24-11111-DJC, 2025 WL 589021, at *1 n.1 (D. Mass. Feb. 24, 2025) (same). None of these exceptions is applicable here. The court does not consider the LPD reports.

was no corroborative evidence demonstrating that it occurred." *Id.* ¶¶ 32-33. Plaintiff claims, without any factual basis, that Martir and Borodawka "knew this statement did not occur and knew that it did not constitute a threat to commit a crime," but they charged him anyway. *Id.* ¶ 34.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Iqbal*, 556 U.S. at 678 (additional citations omitted); *see Lapena v. Las Vegas Metro. Police Dep't*, Case No. 2:21-CV-2170 JCM (NJK), 2024 WL 1345226, at *3 (D. Nev. Mar. 29, 2024) (dismissing claims where plaintiff "repeatedly allege[d]—in a conclusory fashion" that defendants knew certain statements that implicated him were false, but he failed to provide "specific and clear factual allegations to explain how they could have known this"); *Guzman v. City of Newark,* Case No. 20cv6276 (EP) (JSA), 2023 WL 373025, at *7 (D.N.J. Jan. 23, 2023) (plaintiff's allegations, among others, that defendants "'arrested [him] knowing that he/they did not have probable cause to do so" lacked "meaningful factual content to support a lack of probable cause"; malicious prosecution claim was dismissed).

Plaintiff's allegations are conclusory; the facts are not sufficiently pled. Plaintiff's malicious prosecution claims against Martir and Borodawka should be dismissed.

3. <u>The Operating with a Suspended License Charges (the Perrin, Jr. Stop).</u>

Finally, any malicious prosecution claim Plaintiff brings against Perrin, Jr. or Trani under § 1983 or the common law fails for the simple reason that there was probable cause to charge him. Plaintiff alleges that on May 14, 2024, Perrin, Jr. and Trani charged him with operating a motor vehicle with a suspended license, but that the charge "was dismissed the very next day." (#16 ¶¶ 46-47.)

The Lowell Defendants argue that this charge was supported by probable cause where

Plaintiff's certified driving records reveal that his license was in fact suspended on the date he was cited for operating a motor vehicle with a suspended license. (#20 at 7 n.5, 17.) Plaintiff does not dispute this, and his counsel conceded at oral argument that Plaintiff's license was suspended at the time of the three traffic stops in this case. Obviously, Plaintiff cannot claim that there was no probable cause to charge him. *See Gutierrez v. Mass. Bay Transp. Auth.,* 772 N.E.2d 552, 562 (Mass. 2002) ("[T]he relevant determination in a malicious prosecution claim is whether there was probable cause to 'believe the criminal proceeding could succeed and, hence, should be commenced.'") (additional citation omitted).

The malicious prosecution claim against Perrin, Jr. and Trani should be dismissed.[10]

D. <u>Counts 6, 7, and 8 – Abuse of Process Claims – LEO Defendants.</u>

Count 6, "Common law abuse of process," Count 7, "Abuse of process under 42 U.S.C. § 1983," and Count 8, "Abuse of process under G.L. c. 12, § 11I" are each supported by the single allegation that "[t]he LEO Defendants used process for an ulterior or illegitimate purpose resulting in damage to [Plaintiff]." (#16 ¶¶ 83-88.)

With respect to any claim under § 1983, the First Circuit has recognized that "abuse of process -- as a claim separate from a claim that there was no probable cause to make the arrest or institute the prosecution -- is not cognizable as a civil rights violation under § 1983." *Santiago v.*

---

[10] Count 5, "Malicious prosecution under G.L. c. 12, § 11I," should also be dismissed. Plaintiff does not specify any "right[] secured by the Constitution or laws of either the United States or of the Commonwealth" that was "interfered with, or attempted to be interfered with, by threats, intimidation or coercion[,]" as any such claim requires. *See Sheffield,* 361 F. Supp. 3d at 166 (additional citation omitted). To the extent he bases this claim on a violation of the Fourth Amendment, it fails for the same reasons the malicious prosecution claim he brings under § 1983 does. *See Lucien-Calixte v. David,* 405 F. Supp. 3d 171, 179 (D. Mass. 2019) (recognizing that MCRA provides "a remedy 'coextensive' with § 1983" and deciding plaintiff's MCRA claim of malicious prosecution on the same basis as his § 1983 claim of malicious prosecution) (additional citation omitted).

*Fenton*, 891 F.2d 373, 388 (1st Cir. 1989); *see O'Brien v. Mulligan*, Civil Action No. 19-11433-LTS, 2020 WL 1027782, at *7 (D. Mass. Mar. 3, 2020) (citing *Santiago* and dismissing "'abuse of process' claim pursuant to Section 1983" where the claim "fail[ed] as a matter of law").

Any common law claim of abuse of process against the LEO Defendants also fails. "Under Massachusetts law, an abuse of process claim requires a plaintiff to show that 'process' was used for an ulterior or illegitimate purpose and resulted in damages." *Yacubian v. United States*, 750 F.3d 100, 110 (1st Cir. 2014) (quoting *Vittands v. Sudduth*, 730 N.E.2d 325, 332 (Mass. App. Ct. 2000)). Plaintiff alleges that "[t]he LEO Defendants used process for an ulterior or illegitimate purpose" and, in particular, that each Defendant charged him "to continue the well-documented pattern of harassment and intimidation[.]" (#16 ¶¶ 35, 42, 46.) However, "[t]he ulterior motive must be 'more than the intent to harass; there must be intention to use process for coercion or harassment to obtain something not properly part of the suit.'" *Greenspan v. MasMarques*, Civil Action No. 23-10134-DJC, 2024 WL 1258062, at *13 (D. Mass. Mar. 25, 2024) (quoting *Broadway Mgmt. Serv., Ltd. v. Cullinet Software, Inc.*, 652 F. Supp. 1501, 1503 (D. Mass. 1987)). "'More specifically, abuse of process has been described as a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money.'" *Fabre v. Walton*, 781 N.E.2d 780, 783 n.3 (Mass. 2002) (quoting *Vittands*, 730 N.E.2d at 332) (additional citation and quotations omitted).

The SAC does not plausibly allege that any LEO Defendant charged Plaintiff to obtain some "collateral advantage" or that they used process for an unrelated, ulterior, or illegitimate purpose. *See Hogan v. Teamsters Local 170*, 495 F. Supp. 3d 52, 60 (D. Mass. 2020) ("For a successful abuse of process claim, Plaintiff must show that the process used was not a 'legitimate purpose of the particular process employed.'") (additional citation omitted); *Cooper v. J.C.,* Civil

Action No. 24-11958-AK, 2024 WL 4476498, at *3 (D. Mass. Oct. 11, 2024) (dismissing abuse of process claim where plaintiff's complaint provided "only conclusory allegations to support the inference that any criminal proceeding against [him] had a goal of achieving some collateral objective" and where there were "no factual allegations about the criminal proceedings to allow such an inference").

Counts 6 and 7 should be dismissed.[11]

E. Count 9 – "Civil Rights Conspiracy Under 42 U.S.C. § 1985(3)" – Lowell Defendants.

In Count 9, Plaintiff alleges that "Defendants engaged in a common design or agreement" intended "to deprive [him] of the equal protection of the laws[,]" where "[o]ne or more of the Defendants engaged in an overt act" and he was "injured . . . and/or . . . deprived of a constitutionally protected right" as a result. (#16 ¶¶ 90-93.)

A claim under § 1985(3) must satisfy four elements:

> 'First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right.'

*Parker v. Landry*, 935 F.3d 9, 17-18 (1st Cir. 2019) (quoting *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)) (alterations omitted). As the First Circuit has made clear, "a plaintiff seeking to allege such a conspiracy must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of h[is] civil rights." *Parker*, 935 F.3d at 18 (additional citation omitted).

---

[11] Count 8, "Abuse of process under G.L. c. 12, § 11I," fails, like Count 5, because Plaintiff does not identify any "right[] secured by the Constitution or laws of either the United States or of the Commonwealth" that was "interfered with, or attempted to be interfered with, by threats, intimidation or coercion[,]" as any such claim requires. *See Sheffield*, 361 F. Supp. 3d at 166 (additional citation omitted).

Plaintiff's single allegation that an "agreement" existed "to deprive [him] of the equal protection of the laws" is insufficient to support any claim. (#16 ¶ 91.) *See TrailblazHers Run Co. v. Bos. Ath. Ass'n*, Civil Action No. 1:24-10950-IT, 2025 WL 871248, at *9 (D. Mass. Mar. 20, 2025) (dismissing § 1985(3) claim where plaintiffs' single allegation that they were "'targeted . . . because of their race'" and that defendants had "'conspired to deprive them of their civil rights, including equal protection of the laws'" was conclusory and unsupported by any factual allegations).

Count 9 should be dismissed.

F. Count 10 – Equal Protection Claim Under § 1983 – Lowell Defendants.

Count 10 fails for similar reasons. Plaintiff, who is "a member of a protected class because of his status as an African American man[,]" alleges that "Defendants . . . violated [his] rights to the equal protection of the laws . . . by intentionally treating [him] differently than similarly situated individuals outside of his protected class" and by "target[ing] [him] because of his membership in a protected class[.]" (#16 ¶¶ 95-98.)

"'To prevail on a claim of racial discrimination in violation of the Equal Protection Clause, a plaintiff must establish (1) that he was selected for adverse treatment compared with others similarly situated, and (2) that the selection for adverse treatment was based on his race.'" *Cumby v. Am. Med. Response Inc.*, Civil Action No. 18-30050-MGM, 2019 WL 9244983, at *6 (D. Mass. Oct. 31, 2019) (quoting *Rios-Colon v. Toledo-Davila*, 641 F.3d 1, 4 (1st Cir. 2011)).

There are no facts supporting Plaintiff's claim that he was treated differently because of his race. To the contrary, Plaintiff claims that the alleged misconduct he experienced was "in retaliation" for his and his family's "exercise of their First Amendment rights." *Id.* ¶¶ 22, 59-60. *See Alston v. Spiegel*, 988 F.3d 564, 575 (1st Cir. 2021) (equal protection claim was properly

dismissed where complaint was "bereft of any factual allegations" suggesting that actions taken by defendant were "a result of [plaintiff's] race").

Count 10 should be dismissed.

G. Counts 11 and 12 – Civil Conspiracy Claims – Lowell Defendants.

In Count 11, "Coercive common law conspiracy," Plaintiff alleges, without more, that "Defendants acted in unison with a peculiar power of coercion over [him] which they would not have had if they were acting individually." (#16 ¶ 102.) In Count 12, "Joint liability common law conspiracy," he claims that "[t]wo or more of the Defendants engaged in a common design or agreement, express or otherwise, to commit a wrongful act[,]" and that "[o]ne or more of the Defendants committed a tortious act in furtherance of the common design or agreement." *Id.* ¶¶ 104-05.

"'Under Massachusetts law, either of two possible causes of action may be called 'civil conspiracy.'" *Soni v. Boston Med. Ctr. Corp.*, 683 F. Supp. 2d 74, 100 (D. Mass. 2009) (quoting *Aetna Cas. Surety Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994)). The first of these— a "'coercive type'" of conspiracy—"requires the plaintiff to establish 'that defendants, acting in unison, had some peculiar power of coercion over plaintiff that they would not have had if they had been acting independently.'" *Id.* (additional citation omitted). "[T]his cause of action is 'very limited' and 'rare[,]'" and apart from reciting the relevant standard,[12] Plaintiff does not offer any factual allegations to support it. *Kam-O'Donoghue v. Tully*, Civil Action No. 16-11054-MLW, 2019 WL 4273686, at *25 (D. Mass. Sept. 10, 2019) (citing *Massachusetts Laborers' Health &*

---

[12] *See Jurgens v. Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985) ("In order to state a claim of civil conspiracy, plaintiff must allege that defendants, acting in unison, had 'some peculiar power of coercion' over plaintiff that they would not have had if acting independently.") (quoting *Fleming v. Dane*, 22 N.E.2d 609, 611 (Mass. 1939)).

*Welfare Fund v. Phillip Morris, Inc.*, 62 F. Supp. 2d 236, 244 (D. Mass. 1999)); *see Jurgens*, 616 F. Supp. at 1386 (dismissing claim where plaintiff "failed to allege any such coercive power by defendants").

The second type, which Plaintiff alleges in Count 12, "'is more akin to a theory of common law joint liability in tort[,]' and it 'is invoked to support liability of one person for a tort committed by another.'" *Soni*, 683 F. Supp. 2d at 100 (quoting *Aetna*, 43 F.3d at 1564). This claim requires the existence of "'a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement.'" *Id.* "'Key to this cause of action is a defendant's substantial assistance, [given] with the knowledge that such assistance is contributing to a common tortious plan.'" *Thomas v. Harrington*, 909 F.3d 483, 491 (1st Cir. 2018) (quoting *Kurker v. Hill*, 689 N.E.2d 833, 837 (Mass. App. Ct. 1998)) (alteration in original).

Plaintiff alleges, without specifying any defendant, that "[t]wo or more of the Defendants engaged in a common design or agreement[,]" with "[o]ne or more of the Defendants committ[ing] a tortious act in furtherance of [it][.]" (#16 ¶¶ 104-05.) Plaintiff does not offer any factual allegations of an agreement between Defendants. He does not plausibly allege that any defendant substantially assisted and contributed to "a common tortious plan," nor does he even allege that any defendant communicated with another during or between the three incidents that make up this lawsuit, some of which occurred years apart. *See Soni*, 683 F. Supp. 2d at 101 (dismissing civil conspiracy claim where plaintiff failed to allege that defendant "said anything or did anything to encourage" another defendant to take adverse action against her; there was "simply [] nothing in the complaint to indicate" that they were "acting in concert" with one another).

Counts 11 and 12 should be dismissed.

H. <u>Counts 13 and 14 – The *Monell* Claims – City of Lowell.</u>

Counts 13 and 14 assert claims against the City under *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658 (1978). Under *Monell*, a municipality "'may be liable under [§ 1983] if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)) (additional citation and quotations omitted) (alteration in original). This requires a plaintiff to show that, "through its *deliberate* conduct, the municipality was the moving force behind the injury alleged[.]" *Haley*, 657 F.3d at 51 (additional quotations and citations omitted) (emphasis in original).

1. <u>Count 13 – "Official Policy or Custom."</u>

In Count 13, Plaintiff claims that the City "has official policies or customs in place" that "amounted to deliberate indifference to the rights of the persons with whom the LEO Defendants came into contact." (#16 ¶¶ 107-08.) Plaintiff, who alleges that "[t]he LEO Defendants acted pursuant to these official policies or customs[,]" asserts that he "was harmed and deprived of his constitutional rights as a result." *Id.* ¶¶ 109-10.

To succeed on such a claim, a plaintiff must "identify a municipal policy or custom that caused [his] injury." *Haley*, 657 F.3d at 51 (additional quotations and citations omitted). Plaintiff fails to identify any policy or custom, and one cannot rely on his "conclusory charges" that there were "official policies or customs in place." *See Lucien-Calixte*, 405 F. Supp. 3d at 179 (dismissing *Monell* claim where plaintiff's complaint failed to allege "facts pertaining to any official policy or custom" of the municipality but instead relied on conclusory statements); *see also Nesbitt v. City of Methuen*, Civil Action No. 17-11255-DJC, 2018 WL 3130636, at *3 (D. Mass. June 26, 2018) (*Monell* claim failed where, apart from his "conclusory allegation[s]," plaintiff "d[id] not identify

any specific policy or custom; d[id] not identify any particular decisionmakers who established said policy or custom; and d[id] not allege that said policy or custom was applied in any circumstances beyond his own").

2. Count 14 – "Failure to Train or Supervise."

Plaintiff alleges in Count 14 that the City "both failed to properly train and/or supervise the LEO Defendants[,]" and that the City's failure to do so "amounted to deliberate indifference" and resulted in harm to him. (#16 ¶¶ 112-15.) "To demonstrate a *Monell* claim based on a failure to train, a plaintiff must show that '[m]unicipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies.'" *Mazza v. City of Boston*, 753 F. Supp. 3d 88, 95 (D. Mass. 2024) (recognizing that "failure-to-supervise claims are subject to the same stringent standard as failure-to-train claims") (additional citation omitted).

Plaintiff makes no allegations that municipal decisionmakers knew or should have known of some lack of training but demonstrated deliberate indifference to its effect. "Courts are 'exceptionally stringent' in finding Section 1983 liability based on claims of failure to adequately train and/or failure to adequately supervise municipal employees[,]" and the allegations supporting this count are impermissibly vague. *Qualls v. Roache*, Civil Action No. 23-10435-GAO, 2024 WL 1333610, at *1 (D. Mass. Mar. 28, 2024) (dismissing failure to train and/or supervise claim where allegations "[we]re too general to meet the stringent standard required to establish municipal liability under Section 1983").

Counts 13 and 14 should be dismissed.

I. <u>Count 15 – "Failure to Train or Supervise Under G.L. c. 258, § 2" – City of Lowell.</u>

In the last count of the SAC, Plaintiff claims that the City "both failed to properly train and/or supervise the LEO Defendants[,]" which "amounted to deliberate indifference to the rights of the persons with whom [they] came into contact." (#16 ¶¶ 117-18.) Section 2 of the Massachusetts Tort Claims Act ("MTCA") provides that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment[.]" Mass. Gen. Laws ch. 258, § 2. "[T]he negligence required for recovery under the MTCA for alleged inadequate police training is similar, if not identical, to the deliberate indifference required under § 1983 in municipal liability claims." *Weiss v. Lavallee,* Civil Action No. 01-40177-FDS, 2005 WL 8176485, at *22 (D. Mass. Oct. 7, 2005)) (additional citation omitted). To the extent Plaintiff seeks to hold the City liable under § 2 for negligently training and/or supervising its officers, his claim is unsupported by any factual allegations, and it fails for the same reasons as the prior count. *See Kendall v. City of Boston,* Civil Action No. 21-10711-ADB, 2022 WL 598165, at *8 (D. Mass. Feb. 28, 2022) (recognizing that "the same reasoning applie[d]" to plaintiff's MTCA claim as that of his *Monell* claims and thus aligning its decision on the MTCA claim with that of its decision on the *Monell* claims).

Count 15 should be dismissed.

V. <u>Conclusion.</u>

For the above reasons, this court recommends that the Lowell Defendants' Motion to Dismiss (#19) be allowed, with the exception that Plaintiff's Fourth Amendment claim against Perrin, Jr. under § 1983 in Count 1 proceed.[13]

July 15, 2025                                  /s/ M. Page Kelley
                                              M. Page Kelley
                                              United States Magistrate Judge

---

[13] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to this Report and Recommendation must file specific written objections with the Clerk within fourteen (14) days of receipt of this Report and Recommendation. The objections must specifically identify the portion of the Report and Recommendation to which objections are made and state the basis for such objections. A party's failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review. *See Santos-Santos v. Torres-Centeno*, 842 F.3d 163, 168–69 (1st Cir. 2016).